# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Christine M. Arguello

Civil Action No. 16-cv-01664-CMA-KMT

ESTATE OF RYAN RONQUILLO, by and through Estate of April Sanchez,

 Plaintiff,

v.

CITY AND COUNTY OF DENVER,
ERNEST SANDOVAL,
JEFFREY DIMANNA,
JOEL BELL,
LUKE INGERSOLL,
BRIAN MARSHALL,
DANIEL WHITE, and
TONI TRUJILLO,

 Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

---

This matter is before the Court on two motions to dismiss Plaintiff Estate of Ryan Ronquillo's Complaint (Doc. # 1): (1) Defendants City and County of Denver (Denver), Ernest Sandoval, Jeffrey Di Manna, Daniel White, Brian Marshall, Joel Bell, and Toni Trujillo's (Denver Defendants) motion (Doc. # 21); and (2) Defendant Luke Ingersoll's motion (Doc. # 26).[1]  For the reasons stated below, the motions are granted.

---

[1] The Court will refer to all Defendants, including Denver, as "Defendants" collectively, and will refer to the individual Defendants — Officers Sandoval, Manna, White, Marshall, Bell, Trujillo, and Ingersoll — as Defendant Officers.

## I.    Procedural History

Plaintiff commenced this suit on June 28, 2016, following an interaction between Mr. Ronquillo and the Defendant Officers that resulted in Mr. Ronquillo's death. Plaintiff's complaint raises two claims for relief: first, a Fourth Amendment excessive force claim against all Defendant Officers, primarily alleging that they unreasonably used deadly force against Mr. Ronquillo when they shot him in his car while he was "in no way posing any immediate or exigent thereat to the safety of the officers or others." (Doc. # 1 at ¶¶ 206–11.)  Second, Plaintiff raises a 42 U.S.C. § 1983 municipal liability claim against Denver, asserting that Denver has "maintained long-standing, department-wide policies and customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to excessive force by police officers" and that these were the moving forces behind Mr. Ronquillo's death.  (Doc. # 1 at ¶¶ 233–34.)

Defendants moved to dismiss the complaint on August 29, 2016 (Denver Defendants, Doc. # 21) and August 31, 2016 (Deputy Ingersoll, Doc. # 26) pursuant to Fed. R. Civ. Proc. 12(b)(6).  Defendants argue that Plaintiff has failed to properly allege a Fourth Amendment violation because the Defendant Officers' use of deadly force was reasonable to protect themselves and others from Mr. Ronquillo when he was using his car as a deadly weapon.  Likewise, they argue that Plaintiff's claims are barred by the doctrine of qualified immunity.  In addition, Denver Defendants contend that Plaintiff has failed to assert a cognizable municipal liability claim under § 1983 because Plaintiff's allegations are conclusory and insufficient.

## II.    Legal Principals Governing Motions to Dismiss

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must contain sufficient factual matter, taken as true and viewed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility in this context means that the plaintiff pled sufficient facts to elevate the claims above the level of mere speculation and allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  In this case, however, the parties have asked the Court to additionally review and consider video surveillance.  Exceptions to the general rule limiting the court's review to the complaint include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice."  *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see Jackson v. Gatto*, No. 13-CV-02516-CBS, 2014 WL 2743130, at *3 (D. Colo. June 17, 2014) (considering video evidence in ruling on a motion to dismiss).

Plaintiff incorporated the video recording in the complaint by reference and also conventionally filed it as Exhibit A with the Court Clerk.  (Doc. # 1 at ¶ 6; Doc. # 4.)

Plaintiff also refers to the video and relies on its contents throughout the complaint. (Doc. # 1 at ¶¶ 62, 77, 85, 106, 161.)   Neither side appears to challenge the video's authenticity.[2]  *See Scott v. Harris,* 550 U.S. 372, 379 (2007) (in a case involving allegations of excessive force, the Supreme Court considered the contents of a videotape "capturing the events in question" for which there were no allegations or indications of doctoring or tampering in any way).  Thus, the Court has reviewed the video surveillance and considers it in deciding the pending motions to dismiss.  In so doing, the Court views the video in the light most favorable to Plaintiff, except where the video "blatantly contradicts" Plaintiff's version of the events.  *See Thomas v. Durastanti*, 607 F.3d 655, 672 (10th Cir. 2010) (on a motion for summary judgment, a court may reject a plaintiff's version of the events when video evidence "blatantly contradicts" that version); *Choate v. City of Gardner, Kansas*, No. 16-2118-JWL, 2016 WL 2958464, at *3 (D. Kan. May 23, 2016) (applying this standard to a motion to dismiss).

### III.    Factual Background

"The first step in assessing the constitutionality of the [Defendants'] actions is to determine the relevant facts," *Scott*, 550 U.S. at 378, which, in the context of this case, means Plaintiff's well-pleaded allegations, as well as the actions clearly captured on the video recording.

---

[2] Defendants also attach video surveillance to their motions to dismiss. (Doc. ## 21-2, 22, 26-2.) They ask the Court to rely on their videos instead of Plaintiff's, arguing that they are more complete and provide better quality and resolution.  (Doc. # 21 at 2, n 3.)  Having reviewed all videos, the Court finds the differences between them to be insignificant and given the posture of this case, the Court relies on Plaintiff's submitted exhibit, instead of Defendants' submissions. *Cf. Jackson v. Gatto*, No. 13-CV-02516-CBS, 2014 WL 2743130, at *3 (D. Colo. June 17, 2014) (reviewing a time-stamped video recording submitted by the defendant only because plaintiffs did not submit a video and, even so, viewing the video in the light most favorable to the plaintiffs).

Viewed in that light, the evidence establishes the following:  On July 2, 2014, police officers pursued Mr. Ronquillo based on arrest warrants for suspected property crimes.  (Doc. # 1 at ¶¶ 3, 29.)  Mr. Ronquillo, who was unarmed, backed his car into a parking spot at a funeral home where his friend's funeral was taking place.  (Id. ¶ 46; Doc. # 4 at 00:04–00:25.)  Seconds later, two unmarked sport utility vehicles (SUVs), driven by Defendants Ingersoll and Bell, entered the parking lot "without sirens" and "wedged" Mr. Ronquillo into his parking spot.  (Doc. # 1 at ¶¶ 45, 48, 55–56; Doc. # 4 at 00:28–00:32.)  Defendants Ingersoll and Bell immediately exited their respective SUVs and quickly approached Mr. Ronquillo's car—Ingersoll approached the passenger side and Bell approached the driver side.  (Doc. # 1 at ¶¶ 58–59; Doc # 4 at 00:33–00:41.)  At the same time, Defendant Sandoval, who had convened on the scene in a separate marked police car, approached the driver side of Mr. Ronquillo's car.  (Doc. # 1 at ¶¶ 60–61; Doc # 4 at 00:35–00:41.)

Plaintiff contends that none of these Defendant Officers gave Mr. Ronquillo the opportunity to surrender peacefully and Mr. Ronquillo was unaware that the men were police officers.  Although the video has no sound and the Court cannot say whether the Defendant Officers verbally identified themselves or asked Mr. Ronquillo to surrender, the video clearly demonstrates that Defendant Bell wore a vest and Defendant Sandoval was in full police uniform.  (Doc # 4 at 00.33–00:41.)  It therefore contradicts Plaintiff's assertion that Mr. Ronquillo was unaware that the men were police officers. Plaintiff next states that all three Defendant Officers attempted to forcibly extract Mr. Ronquillo from his car.  (Doc. # 1 at ¶¶ 67, 71–77; 88–104.)  Plaintiff specifies that

Defendant Sandoval "pounded Mr. Ronquillo in the face repeatedly through his car window" (Id. at ¶ 86); Defendant Bell "aggressively hit[] him . . . trying to forcibly remove him" (Id. at ¶ 92); and Defendant Ingersoll attempted to break Mr. Ronquillo's passenger-side car window and "grab him" from the car.  (Id. at ¶¶ 94–96.)  The video does not blatantly contradict Plaintiff's assertion that these Defendant Officers forcibly tried to extract Mr. Ronquillo from the car—nor do Defendants deny that this occurred. The Court must therefore at this stage accept as true Plaintiff's allegation that they acted as Plaintiff contends.  *See Choate*, 2016 WL 2958464, at *3.  However, the video clearly contradicts Plaintiff's next allegation—that Defendants Sandoval, Bell, and Ingersoll acted with such force that they jostled the car forward, causing it to hit Defendant Ingersoll's SUV.  (Doc. # 37 at 12.)    The video instead depicts movement from Defendant Ingersoll's SUV that is consistent with being hit by a car, not with a car being jostled into it.  (Doc. # 4 at 00:43–00:44).  Moreover, the SUV's movement occurred only seconds after the Defendant Officer's approached and before they had much time to attempt extraction.  The Court can therefore reach no other conclusion than that Plaintiff intentionally accelerated forward as Defendants Ingersoll, Bell, and Sandoval began their efforts to extract him.

Less than five seconds later, Mr. Ronquillo attempted to escape by reversing his car over the median and out of the parking lot.  (Doc. # 1 at ¶¶ 105, 108; Doc. # 4 at 00:48–00:52.)  As he did so, Mr. Ronquillo hit various officers who were standing behind his car and crashed into Defendant Trujillo's car, which was parked in the middle of the street.  (Doc. # 1 at ¶¶ 63–66, 110; 108–09; Doc. #4 at 00:44–00:48.)

Mr. Ronquillo then "put, or was putting his car in gear to move forward."  (Doc. # 1 at ¶ 118.)  At that moment, Plaintiff asserts that Defendants Trujillo, DiManna, Marshall, and White opened fire—killing Mr. Ronquillo instantly.  (Id. at ¶¶ 118–126.) The Court's review of the video surveillance, however, contradicts Plaintiff's allegation that Mr. Ronquillo was shot as soon as he "put, or was putting his car in gear to move forward." (Doc. # 1 at ¶ 118.)  The video instead shows Mr. Ronquillo's car rapidly accelerating forward, over a median, into the parking lot, and crashing into the SUV wedge—a car movement that is wholly inconsistent with the notion that Mr. Ronquillo was shot before ever pressing on the gas.  (Doc. # 4 at 00:57–1:00.)  The Court cannot, therefore, take that allegation as true.

The video also contradicts Plaintiff's assertion that no officers stood in the car's forward-moving path.  Specifically, Plaintiff alleges that all officers had taken safe positions around the perimeter of Mr. Ronquillo's car before it began moving forward. (Doc. # 1, ¶¶ 111–118.)  Although the video does not show the locations of all officers, some can be clearly seen jumping out of the way as the vehicle accelerated toward them.  (Doc. # 4 at 00:56-00:59.)  The Court cannot accept as true Plaintiff's allegation to the contrary.  The Court does, however, accept Plaintiff's assertion that all officers were successful in moving to safe positions by the time Mr. Ronquillo's car reached them and none were actually hit during his acceleration.

Based on these facts, Court now assesses whether the Defendant Officers' use of deadly force, as Mr. Ronquillo accelerated his car forward over the median, into the

7

parking lot, and in the general direction of officers, was excessive—considering that all officers were able to move out of the car's path before the car reached them.

## IV.   Analysis

### A.   Plaintiff's Excessive Force Claim

Defendants argue that they did not use excessive force against Mr. Ronquillo in violation of the Fourth Amendment and they are entitled to qualified immunity.  To overcome the defense of qualified immunity, a plaintiff must present enough facts in the complaint, taken as true, to show (1) a violation of a constitutional or statutory right and (2) that the right was clearly established when the alleged violation occurred.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

#### 1.   Violation of a Constitutional Right

Plaintiff argues that the Defendant Officers violated Mr. Ronquillo's constitutional right to be free from the use of excessive force.  A claim that law-enforcement officers used excessive force to effectuate a seizure is governed by the Fourth Amendment's "reasonableness" standard.  *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020 (2014).  In *Graham*, the Supreme Court held that determining the objective reasonableness of a particular seizure "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  490 U.S. 386, 396 (1989) (internal quotation marks omitted).  This balancing requires analyzing the totality of the circumstances, particularly considering (1) the alleged crime's severity, (2) the degree of potential threat that the suspect poses to officers' and others' safety, and (3) the suspect's efforts to resist or evade arrest.  *Id.*

The court conducts this analysis from the perspective of a reasonable officer on the scene, rather than with the vision of 20/20 hindsight, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances. *Plumhoff*, 134 S.Ct. at 2020; *Graham*, 490 U.S. at 396–97. The court may also consider whether the officers "own reckless or deliberate conduct (as opposed to mere negligence) unreasonably created the need to use force." *Thomas*, 607 F.3d at 664; *see Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997); *Sevier v. City of Lawrence*, Kan., 60 F.3d 695, 699 (10th Cir. 1995); *Jackson*, 2014 WL 2743130, at *7.

As to the first *Graham* factor—the severity of the crime—Defendants were pursuing Mr. Ronquillo for arrest warrants relating to felony motor vehicle theft and criminal trespass. At least one other court in this district has considered felony auto theft to be severe enough to weigh in the defendant's favor under *Graham*. *See Martinez v. City of Aurora*, No. 14-CV-00619-PAB-KLM, 2016 WL 97748, at *4 (D. Colo. Jan. 8, 2016). In that case, however, the auto theft had been accompanied by a high-speed chase. In this case, Defendants do not contend that Mr. Ronquillo's alleged crimes were accompanied by a high-speed chase or any similar behavior. Although auto theft is serious, nothing before the Court suggests that Mr. Ronquillo used violence in the alleged commission of any crimes. Although Defendants feared that Mr. Ronquillo would engage in a car chase when being arrested, Defendants' own arrest plan—wait until Mr. Ronquillo has parked—was enacted to assuage this concern. Moreover, that concern, standing alone, has little to do with the severity of Mr. Ronquillo's previous crimes because it was not based on Mr. Ronquillo's conduct during

the alleged commission of them. *See Estate of Redd v. Love*, No. 2:11-CV-00478-RJS, 2015 WL 8665348, at *11 (D. Utah Dec. 11, 2015) ("[W]hile trafficking in Native American artifacts and theft of tribal property are serious offenses that warrant federal criminal penalties, the single nonviolent crime with which [the suspect] was charged is of comparatively low severity."). The Court therefore considers Mr. Ronquillo's alleged crimes to be of a low severity and weighs this factor in Plaintiff's favor.

The second *Graham* factor asks whether the suspect posed an immediate threat to the safety of officers or others. The Court assesses this factor at the "precise moment" the Defendant Officers used force, still taking Plaintiff's well-pleaded allegations as true and viewing the incident from the perspective of an objectively reasonable officer on the scene. *See Thomas*, 607 F.3d at 664 (considering whether an officer "could have reasonably perceived he was in danger at the precise moment that he used force"); *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (same); *see also Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008) ("[T]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Plaintiff's allegations coupled with video footage suggest that Defendant Officers fired shots at Mr. Ronquillo as he accelerated his car forward over the median, into the parking lot, toward a confined space where other officers were, or had been, positioned. At that moment, Defendant Officers had to quickly determine whether Mr. Ronquillo's car placed themselves or other officers in danger. Viewing this incident from the perspective of an objectively reasonable officer, it was entirely possible for Defendant Officers to believe

10

that other officers were in danger of being hit by the car.  *See Tanner v. San Juan Cty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1139 (D.N.M. 2012) ("Officers are permitted to use a greater degree of force when they reasonably believe that a suspect is resisting arrest or attempting to harm them, even if that belief is mistaken—as long as the mistake is reasonable.") (citing *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004)).  To the extent that reasonable officers under these facts would even have time to ponder the options, they would consider several factors suggesting that harm to other officers was imminent, including that Mr. Ronquillo (1) by any account, was not acting calmly or cooperatively; (2) had already accelerated forward while Defendants Ingersoll, Bell, and Sandoval stood dangerously close to the car; (3) had just reversed and hit various officers and Defendant Trujillo's vehicle with his vehicle; (4) did not attempt to drive in a different direction once out of the parking lot, but instead (5) accelerated directly at the officers.  Even accepting as true Plaintiff's allegation that all officers were quickly able to take positions of safety by the time the car reached them and were not injured as it accelerated forward, under the above-described circumstances, it was reasonable for Defendant Officers to believe that Mr. Mr. Ronquillo was attempting to harm them with his vehicle—such that their use of deadly force was reasonable.  *See Thomas*, 607 F.3d at 664 ("If threatened by weapon (which may include a vehicle attempting to run over an officer), an officer may use deadly force."); *Cordova v. Aragon*, 569 F.3d 1183, 1187–88 (10th Cir. 2009) ("[I]t goes without saying that an officer in close quarters is no match for a two-ton vehicle."); *Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007) ("Proximity and temporal factors [are] relevant . . . in a

11

case involving a police officer who fired his weapon at a truck that gunned its engine
and accelerated towards the officer.") (internal quotation marks omitted).  Thus, this
factor weighs in favor of Defendants.

Regarding the third *Graham* factor—whether the suspect is actively resisting
arrest or attempting to evade arrest by flight—the Court concludes that it also favors
Defendants.  The video shows Mr. Ronquillo actively resisting and attempting to flee,
and Plaintiff does not dispute that Mr. Ronquillo tried to drive away.  Plaintiff
nonetheless argues that Mr. Ronquillo was not resisting arrest, but rather exercising his
right to self-defense against unknown assailants.[3]  As mentioned, the video clearly
shows Defendant Sandoval approaching Mr. Ronquillo's car in uniform before any
Defendant Officers attempted to extract him.  Moreover, after Mr. Ronquillo reversed his
car out of the parking lot into Defendant Trujillo's police car, the video shows various
officers standing around the vehicle and visible to Mr. Ronquillo.  This directly
contradicts Plaintiff's contention that Mr. Ronquillo did not know he was being
confronted by police.  *See also Hocker v. Pikeville City Police Dept.*, 738 F.3d 150, 155
(6th Cir. 2013) ("[I]t makes no difference that the plaintiff may not have intended to hurt
the officers, that he may not have known the officers were trailing him, and that he may
not have heard the officers insist he exit the car.  The question is not the plaintiff's state

---

[3] Plaintiff also cites Colo. Rev. Stat. § 18-8-103(2) for the proposition that arrestees have a right
to defend themselves from a police assault.  That statute applies to unlawful arrests, which is
not the issue here.  Regardless, to the extent Plaintiff is alternatively arguing that Mr. Ronquillo
*did know* that Defendants Ingersoll, Bell, and Sandoval were police officers and fled from them
in self-defense, the Court rejects that argument.  Defendants Ingersoll, Bell, and Sandoval's
initial actions, viewed in the light most favorable to Plaintiff, were not excessive considering that
Mr. Ronquillo, knowing police officers confronted him, accelerated his car forward just seconds
after the Defendant Officers approached.  The Defendant Officers subsequent attempts to
extract him from the vehicle to effectuate an arrest, even if forcible, were not excessive.

of mind.  It is whether a reasonable officer could perceive the plaintiff's actions as so dangerous as to warrant the force used.).  Plaintiff also argues that Mr. Ronquillo could not have fled because his path was obstructed by the SUVs.  Accepting that as true, that Mr. Ronquillo *could not* flee does not undermine the conclusion that Mr. Ronquillo was still *attempting* to flee at the time he was shot.  This factor accordingly weighs in favor of Defendants.

Nonetheless, as Plaintiff notes, even if the *Graham* analysis weighs in Defendants' favor, Defendant Officers could still be liable for the use of excessive force if their deliberate or reckless actions before the shooting unreasonably created the need to use such deadly force.  *See Thomas*, 607 F.3d at 668.

Plaintiff primarily argues that Defendant Officers unreasonably created the need to use deadly force when they (1) failed to identify themselves; (2) declined to give Mr. Ronquillo the chance to surrender and instead began recklessly assaulting him; and (3) placed themselves in danger by standing behind, and around, Mr. Ronquillo's car.  The Court has already addressed and rejected the Plaintiff's first argument.  Regarding the second contention, Defendants agree they immediately began attempts to extract Mr. Ronquillo from the car and prevent him from putting it into gear.  Even assuming that their extraction attempts were reckless and caused Mr. Ronquillo to reverse his car, those attempts had ceased by the time Mr. Ronquillo accelerated the car forward, which prompted the shooting.  "[I]f the preceding events [of officers] are . . .  attenuated by . . . intervening events, then they are not to be considered in an excessive force case." *Sevier*, 60 F.3d 695 at 699; *see also United States v. Melendez-Garcia*, 28 F.3d 1046,

13

1052 (10th Cir. 1994) (courts do not require officers "to use the least intrusive means in the course of a detention, only reasonable ones").  In other words, Mr. Ronquillo's forward acceleration, after having extracted his vehicle from the parking lot by driving his car in reverse over the median and out of the parking lot, not Defendant Officers' extraction actions, created Defendant Officers' need to use of deadly force.

As to Plaintiff's third argument, the Court does not consider Defendant Officers' positioning decisions, which were made in the mere seconds it took Mr. Mr. Ronquillo to accelerate his vehicle backward and then forward toward the officers in a closely confined space, so reckless as to constitute an unreasonable moving force behind their need for deadly force.  *See United States v. Sokolow,* 490 U.S. at 1, 11 (1989) (court will not indulge in unrealistic second-guessing of police officers' swift, on-the-spot investigatory actions); *Havens v. Johnson*, No. 09-CV-01380-MSK-MEH, 2014 WL 803304, at *6 (D. Colo. Feb. 28, 2014), aff'd, 783 F.3d 776 (10th Cir. 2015) (rejecting plaintiff's suggestion that the officer's use of force was unreasonable because the officer put himself in a dangerous position relative to the plaintiff's vehicle); *Cf. Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1154–55 (10th Cir. 2010) (viewing officer's use of deadly force as unreasonable where the officer positioned himself in front of the plaintiff's van without identifying himself as an officer and where there was no threat of physical harm to himself or anyone else because plaintiff's van was stuck in a pile of rocks).

Considering the totality of circumstances at play here, the Court concludes that, even accepting Plaintiff's allegations as true and viewing the video footage in the light

14

most favorable to Plaintiff, Plaintiff has not shown sufficient facts to demonstrate that Defendant Officers violated Mr. Ronquillo's Fourth Amendment rights.

    2.    <u>Whether the Constitutional Right was Clearly Established</u>

Having concluded that Plaintiff's excessive force claim fails to plausibly allege a constitutional violation, the Court need not reach the "clearly established" prong of qualified immunity to conclude that dismissal of the claim is correctly granted.  Where a Fourth Amendment violation is not properly alleged, "the inquiry ends and the officer is entitled to qualified immunity."  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

The Court accordingly dismisses Plaintiff's excessive force claim.

## B.    Plaintiff's Claim of Municipal Liability

Denver Defendants move to dismiss Plaintiff's § 1983 claim against Denver.  To establish a municipality's liability under § 1983, a plaintiff must first show a municipal employee exceeded constitutional limitations on the use of force.  *Allen*, 119 F.3d at 841; *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 386–87 (1989).  Because the Court has concluded that Plaintiff has not made such a showing here, Plaintiff's claim of municipal liability also cannot succeed.  The Court accordingly dismisses Plaintiff's municipal liability claim.

## V.    Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss (Doc. ## 21, 26) are GRANTED and Plaintiff's Claims for Relief (Doc. # 1) are DISMISSED with prejudice.[4]

---

[4] The Court finds, considering the totality of circumstances and video evidence before the Court, affording the Plaintiff an opportunity to amend the complaint in an attempt to assert a plausible

DATED:  November 17, 2016            BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

_____

cause of action would be futile.  *See Grossman v. Novell, Inc.,* 120 F.3d 1112, 1126 (10th Cir.
1997).

16